IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

JESSE BATES and WIFE,
ARMER BATES, and
FRITO-LAY, INC.,

      Plaintiffs,

v.  No. 02-2887-B

CONNIE CARLSON,
INDIVIDUALLY, and
the UNITED STATES OF
AMERICA,

      Defendants.
_____

AMENDED ORDER GRANTING MOTION TO AMEND JUDGMENT
_____

The Plaintiffs, Jesse Bates, Armer Bates, and Frito-Lay, Inc., brought this action against the Defendants, Connie Carlson and the United States of America, arising from an automobile accident occurring in Memphis, Tennessee. The Court's jurisdiction was based on diversity of citizenship. See 28 U.S.C. § 1332. The matter was tried March 31, 2005, by a jury, which returned a verdict in favor of the Plaintiffs. Thereafter, this Court entered judgment pursuant to the jury's verdict and this Court's findings of fact and conclusions of law. See (D.E. #132). Before the Court is the motion to amend the judgment by Plaintiffs Jesse and Armer Bates in which they argue that based upon Arkansas law, Jesse Bates is entitled to the amount awarded Plaintiff Frito-Lay, his employer at the time of the accident, because he was not "made whole" for his losses by the sums awarded by the jury. Frito-Lay has responded, and this motion is now appropriate for disposition. For the reasons set forth below, the motion to amend the judgment is GRANTED.

BACKGROUND

The Court outlined this case's background in its findings of fact and conclusions of law entered on June 19, 2006, as follows:

> This case involves claims and counterclaims arising from a three-vehicle accident that occurred in Memphis, Tennessee, on January 21, 2002. The following is a clarification of the various claims and parties:
> 1. Shirley Miller, wife of the deceased Postal Service employee, Robert Miller, sued Frito-Lay, Inc., Jesse Bates, a Frito-Lay employee and Connie Carlson, the driver of another vehicle.       .
> 2. Jesse Bates and his wife Armer Bates sued Connie Carlson and the United States, as representative of the deceased postal driver, Robert Miller.
> 3. The United States sued Connie Carlson, Jesse Bates and Frito-Lay.
>
> The claims of Shirley Miller were dismissed prior to trial. Likewise, the claims by the United States against Jesse Bates and Frito-Lay, and the property damage claim of Frito-Lay against the Postal Service were dismissed prior to trial. Accordingly, the claims that went to trial were the following:
> 1. The claims of Jesse Bates and his wife, Armer Bates, against the United States and Connie Carlson.
> 2. Frito-Lay's claim against Connie Carlson for property damages to its vehicle and for workers' compensation benefits consisting of wage loss and medical benefits paid its driver, Jesse Bates.
> 3. Frito-Lay's claim against the United States for its subrogation interest for monies paid to Mr. Bates for workers' compensation benefits in the form of medical payments and wage loss benefits.
> 4. The claim of the United States against Connie Carlson for its property damages.
>
> The trial of this matter was held March 28, 2005 through March 31, 2005. The matters tried to the jury were the claims of the United States against Connie Carlson; the claims of Jesse and Armer

Bates against Connie Carlson; and, Frito-Lay's claims against Connie Carlson. The jury found fault as follows:
1. Connie Carlson 51%
2. Jesse Bates 22%
3. Robert Miller 27%.

The jury set the parties' damages as follows:

| | |
|---|---|
| Jesse Bates | $350,000.00 |
| Armer Bates | $ 0 |
| Frito-Lay, Inc. | $ 38,519.89 [1] |
| United States of America | $ 31,110.00 |

(Findings of Fact and Conclusions of Law, June 19, 2006, D.E. #132, at 1-3).

The damages asserted by Frito-Lay were its payment of worker's compensation benefits to Jesse Bates. Concerning that issue, the Court stated,

> The workers' compensation benefits were paid by Frito-Lay under Arkansas law. If Mr. Bates and Frito-Lay are unable to resolve the issue of entitlement to the workers' compensation subrogation recovery, either Bates or Frito-Lay can file a motion for the Court to resolve that issue.

(Id. at 15).

## ANALYSIS

Jesse Bates contends that he was not fully compensated or made "whole" by his recovery at the trial. Therefore, under Arkansas law, which the parties agree applies to this issue, Frito-Lay's right to subrogation did not vest, thereby entitling Bates to the damages awarded to Frito-Lay. Frito-Lay responds that its right to subrogation for its payments of worker's compensation benefits under Arkansas law is governed by statute, that the made whole doctrine as applied by the Arkansas courts

---

[1] Frito-Lay's damages resulted from payments of Bates' medical expenses in the amount of $16,940.01, wage loss benefits in the amount of $9,781.42, and property damage to its vehicle in the amount of $11,798.46. Therefore, Frito-Lay paid Bates a total of $26,721.43 in worker's compensation benefits on behalf of its injured employee.

3

is equitable in nature, and that a finding that Bates was not made whole in this case would be inequitable.[2]

The right of subrogation for benefits paid by the employer/insurer in Arkansas has been codified in Ark. Code Ann. § 11-9-410. The relevant portions of the statute provide,

> (a) LIABILITY UNAFFECTED. (1)(A) The making of a claim for compensation against any employer or carrier for the injury or death of an employee shall not affect the right of the employee, or his or her dependents, to make a claim or maintain an action in court against any third party for the injury, but the employer or the employer's carrier shall be entitled to reasonable notice and opportunity to join in the action.
> (B) If they, or either of them, join in the action, they shall be entitled to a first lien upon two-thirds ( 2/3 ) of the net proceeds recovered in the action that remain after the payment of the reasonable costs of collection, for the payment to them of the amount paid and to be paid by them as compensation to the injured employee or his or her dependents.
> (2) The commencement of an action by an employee or his or her dependents against a third party for damages by reason of an injury to which this chapter is applicable, or the adjustment of any claim, shall not affect the rights of the injured employee or his or her dependents to recover compensation, but any amount recovered by the injured employee or his or her dependents from a third party shall be applied as follows:
> (A) Reasonable costs of collection shall be deducted;
> (B) Then, in every case, one-third ( 1/3 ) of the remainder shall belong to the injured employee or his or her dependents, as the case may be;
> (C) The remainder, or so much as is necessary to discharge the actual

---

[2]The Arkansas Supreme Court has rejected a similar claim where the employee/insured's recovery at the trial was reduced by his own comparative fault and the employee thereafter sought to preclude the enforcement of his employer's subrogation lien, claiming he was not made whole by the jury's verdict. See S. Cent. Ark. Elec. Coop. v. Buck, 117 S.W.3d 591, 594-97 (Ark. 2003) (holding that equity gives to an insurer a right to subrogation but only to prevent the insured from receiving a double recovery) (citing Shelter Mut. Ins. Co. v. Bough, 834 S.W.2d 637 (1992)).  In other words, the opposite of Frito-Lay's assertion is in fact the law in Arkansas: it would be inequitable to allow an employer/insurer a right to subrogation unless the employee has been first made whole.

>>amount of the liability of the employer and the carrier; and
>>(D) Any excess shall belong to the injured employee or his or her dependents.
>>(b) SUBROGATION. (1) An employer or carrier liable for compensation under this chapter for the injury or death of an employee shall have the right to maintain an action in tort against any third party responsible for the injury or death. However, the employer or the carrier must notify the claimant in writing that the claimant has the right to hire a private attorney to pursue any benefits to which the claimant is entitled in addition to the subrogation interest against any third party responsible for the injury or death.
>>        . . . .
>>(B) In no event shall the compensation beneficiary be entitled to less than one-third ( 1/3 ) of the amount recovered from the third party, after deducting the reasonable cost of collection.
>>        . . . .
>>(5) The purpose and intent of this subsection is to prevent double payment to the employee.

Id. The Arkansas Supreme Court has interpreted this statute as follows:

>>[a]n insured's right to subrogation takes precedence over that of an insurer, so the insured must be wholly compensated before an insurer's right to subrogation arises; therefore, the insurer's right to subrogation arises only in situations where the recovery by the insured exceeds his or her total amount of damages incurred.

Franklin v. Healthsource of Ark., 942 S.W.2d 837, 840 (Ark. 1997) (emphasis added); see also S. Cent. Ark. Elec. Coop. v. Buck, 117 S.W.3d 591, 595 (Ark. 2003) (citation omitted) ("[E]quity requires that an insured be made whole before the insurer's right to subrogation arises.").

In Buck, the court addressed an issue similar to the one before this Court. Richard Buck sustained a work related injury upon being hit by an automobile while working as a utility lineman for South Central Arkansas Electric Cooperative ("SCAEC"). Id. at 593. As a result of his injuries, Buck was hospitalized and received $21,979.33 in worker's compensation benefits from his

5

employer. Id. at 597.  Thereafter, Buck filed suit[3] against the driver of the automobile, resulting in a jury verdict in his favor in the amount of $80,000.  Id. at 593.  However, the jury also found Buck to be 40% at fault and "thus, his judgment was reduced to $48,000."  Id.

Following the trial, SCAEC filed a motion to enforce its subrogation lien.  After conducting a hearing, the trial court concluded that because Buck was not fully compensated for his injuries by the jury's verdict, SCAEC's right to subrogation was unenforceable.  Id.  On appeal, SCAEC argued that the trial court erred in determining that Buck was not made whole.  Id. at 594.

In rejecting SCAEC's argument, the court explained,

> the jury determined that Appellee [Buck] incurred damages of $80,000. He actually received a judgment of $48,000. From that judgment amount, costs and attorneys' fees totaling $21,973.22 must be deducted, leaving $26,026.78 in proceeds. This amount combined with the $21,979.33 that Appellee received in compensation benefits totals $48,006.11. Clearly, this amount does not exceed the damages incurred by Appellee. Assuming arguendo that the jury did take into account the $21,979.33 paid by Appellants, Appellee still incurred $58,020.67 in non-reimbursed losses; thus, the judgment of $48,000 is still less than the damages incurred by Appellee. In sum, Appellee was not made whole by his judgment . . . . We, therefore, cannot say that the trial court erred in determining that Appellants' lien right under section 11-9-410 was not enforceable.

Id. at 597.[4]

---

[3]SCAEC intervened in the case, "asserting a right of subrogation to any funds awarded to [Buck]."  Buck, 117 S.W.3d at 593.

[4]In Buck, the Arkansas Supreme Court addressed the general formula for determining whether a employee has been made whole as follows:

> The controlling factor in determining whether Appellee has been made whole is the application of the formula set forth in Franklin, 328 Ark. 163, 942 S.W.2d 837, to the evidence in this case. There, this court stated that "the precise measure of reimbursement is the amount by which the sum received by the insured from the [third

Applying the Buck formula to this case, the jury assessed Bates' damages at $350,000 but found him to be 22% comparatively at fault, thereby reducing the amount he actually received to $273,000.[5] This amount combined with the $26,721.43 that Bates received in compensation benefits totals $299,721.43. Because this amount is still less than the damages incurred by Bates, the Plaintiff was not made whole by his judgment.[6] Accord Yancey v. B&B Supply, 213 S.W.3d 657, 659-60 (Ark. Ct. App. 2005).

Notwithstanding Arkansas law, Frito-Lay argues that Bates should not be awarded the worker's compensation benefits because the Plaintiff stipulated in the pretrial order that Frito-Lay was "entitled to recover its damages, property damage, economic loss and all worker's compensation benefits paid by or on its behalf." (Frito-Lay's Resp. to Bates' Mot. to Amend Judgment at 1) (quoting pretrial order).[7] The employer claims the pretrial order is binding on the parties and that Bates cannot now disavow it, citing Wright, Miller & Kane's Federal Practice & Procedure, Civil 2d, § 1526.

---

        party], together with the insurance proceeds, exceeds the loss
        sustained and the expense incurred by the insured in realizing on
        his claim."

117 S.W.3d at 596-97 (quoting Franklin, 942 S.W.3d at 839-40).

[5]The amount of Bates' attorney's fees is not part of the record before this Court. However, as those figures would only further strengthen Bates' position, they are not necessary to the determination that Bates was not "made whole" under Arkansas law.

[6]At the trial, the jury returned a specific verdict regarding the subrogation claims of Frito-Lay. Therefore, the Court assumes that the jury did not factor the worker's compensation benefits into the damages it awarded Bates.

[7]The Court notes that the portion of the pretrial order quoted by Frito-Lay was not a stipulation. Rather, the language at issue was in the section of the pretrial order entitled "Contentions of the plaintiffs, Jesse Bates, Armer Bates, and Frito-Lay, Inc." and in particular was found in a paragraph representing the contentions of Frito-Lay. (pretrial order at 2).

The Court agrees with the general proposition that the pretrial order "controls the subsequent course of the action." Fed. R. Civ. P. 16(e). Here, however, the order did not address the Arkansas "made whole" doctrine. Thus, Frito-Lay's contention in the pretrial order that it was entitled to the benefits it paid to its employee did not prevent Bates from disputing Frito-Lay's subrogation lien where he was awarded less by the jury than the amount of his damages. Regardless of whether the language in the pretrial order was a stipulation or contention, under Arkansas case law, Frito-Lay would be entitled to its subrogation judgment if, and only if, Bates was made whole by the judgment. As noted, Frito-Lay's right to subrogation in this case never accrued because Bates was not made whole by the jury verdict. See Buck, 117 S.W.3d at 595; Franklin, 942 S.W.2d at 840. Thus, Bates' motion to amend the judgment is granted.

## CONCLUSION

Based on the foregoing, the motion to amend judgment is GRANTED. The judgment will be amended by subtracting the $20,842.72[8] awarded Frito-Lay in compensation damages and adding that amount to Bates' total award.

IT IS SO ORDERED this 11th day of June, 2007.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE

---

[8] The $20,842.72 represents $13,627.93 ($26,721.43 (amount awarded to Frito-Lay against Carlson for worker's compensation payments to Bates) x Carlson's fault–51%) plus $7,214.79 ($26,721.43 x Miller's fault–27%).